IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

RICK ABEGGLEN,

                Plaintiff,                OPINION AND ORDER

   v.
                                          24-cv-105-wmc

STATE FARM FIRE AND
CASUALTY COMPANY,

                Defendant.

---

Plaintiff Rick Abegglen alleges breach of contract, bad faith and statutory interest claims against defendant State Farm Fire and Casualty Company ("State Farm") for not covering alleged hail damage to the roof of his house. State Farm has moved for partial summary judgment as to Abegglen's bad faith claim, asserting a reasonable jury would have to find on this record that State Farm thoroughly investigated the claim and, at minimum, had a reasonable basis for denying it. (Dkt. #35.) For the reasons explained below, the court will deny State Farm's motion.

UNDISPUTED FACTS[1]

**A. Background**

At all times relevant to this lawsuit, Abegglen was domiciled at 5675 Ashbourne Lane, Fitchburg, Wisconsin. State Farm is an Illinois insurance company with its principal

---

[1] The following facts are drawn from the parties' proposed findings of fact and the evidence submitted in support, viewed in a light most favorable to plaintiff, and are undisputed unless otherwise noted.

place of business in Illinois.[2]

State Farm issued a policy to Abegglen, covering "accidental direct physical loss to the property" ("ADPL"). (State Farm "Policy" (dkt. #11-1) 38.) However, the Policy does not further define "ADPL." Still, State Farm maintains internal guides that provide adjusters with guidance on how to identify hail damage to property, with one guide stating that "granular loss" alone on a shingle is not enough to be hail damage; rather "bruising" or "fracturing" of the shingle mat is needed. (Brinson Dep. (dkt. #41) 15.) The outermost layer of a shingle is coated with granules of crushed material. (*E.g.*, Pontillo Report (dkt. #38-18) 24.)

B. **Storm and Claim**

Abegglen asserts that a hailstorm damaged the roof of his Fitchburg home on November 4, 2022. On June 12, 2023, roofer Eduardo Mancilla was at an insurance adjustment for Abegglen's neighbor when he saw him outside and asked if he could "do a claim." (Mancilla Dep. (dkt. #40) 6.) After Abegglen agreed, Mancilla spotted and took pictures of damage. (*Id.*)

---

[2] Although the parties do not expressly allege State Farm's place of incorporation, an internet search reveals the company to be incorporated in Illinois with its corporate headquarters in Bloomington, Illinois. https://insurance.illinois.gov/applications/RegEntPortal/ViewEntityDetails.aspx?en=834600&s=Active&t=INS (last visited Apr. 15, 2025); newsroom.statefarm.com (last visited April 25, 2025). In its removal notice, State Farm further asserts that there is more than $75,000 in controversy because plaintiff asserts claims for breach of contract and bad faith. (Dkt. #1, at 2.) Moreover, the evidence at summary judgment suggests that it could cost $77,835 to replace Abegglen's roof. (Ridge Top Exteriors Estimate (dkt. #38-13).) Finally, Abegglen does not dispute that diversity jurisdiction is appropriate in this case. (Reply in Support of Def.'s Findings of Fact (dkt. #56) ¶ 6.) Thus, the court finds that it has diversity jurisdiction because the parties are diverse, and the amount in controversy exceeds $75,000.

Abegglen then filed a claim with State Farm on June 26, prompting it to assign claims specialist Marcus Brinson to Abegglen's claim. Because Brinson was not qualified to climb on a roof like Abegglen's, Brinson arranged for a third-party vendor, "SeekNow," to inspect his roof. The only information that State Farm provided SeekNow was the location address, State Farm claim number, date of loss, and the policyholder's contact information.

On June 28, 2023, SeekNow inspector Alex Mingari examined Abegglen's roof, reporting spots where the shingles had lost "granules." (*E.g.*, SeekNow Report (dkt. #38-5) 52.) Even so, Mingari concluded,

> No wind or hail damage was found on any slope. No storm related tree damage was found on any slope. No non-storm related tree damage was found on any slope. No damage was found on any hip & ridge. Damage was found to the roof accessories. No Damage was found to the valleys.

(*Id.* at 3.) At his deposition, while Mingari testified that hail impact *could* cause granule loss, he did not believe the granule loss on Abegglen's roof to be "associated with hail hits or storm related." (Mingari Dep. (dkt. #42) 8, 11.) Instead, Mingari testified that the granule loss on Abegglen's roof could have been caused by a "blister," "mechanical damage," or foot traffic from workers. (*Id.* at 11.)

On July 10, based on Mingari's report, Brinson emailed Abegglen's State Farm agent, advising that there did not appear to be a covered loss from the November 4 hailstorm. A few days later, Brinson sent a letter to Abegglen stating, "no payment will be issued for this claim at this time," as the investigation revealed "no wind or hail damage," but rather "signs of wear, tear or deterioration" not covered under the Policy. (Dkt. #52-1, at 1.)

At Abegglen's request, State Farm employees Amanda Widmer and Kyle Maurer performed a second inspection of his roof on August 16. In his claims notes, Maurer wrote that he found "no ADPL ["Accidental Direct Physical Loss"] hail damage of bruising, fracturing or puncturing in test squares on all slopes." (Dkt. #38-10, at 3.) Maurer and Widmer did find hail damage to soft metals on the roof, but Maurer estimated the repair costs to be less than Abegglen's $6,539 deductible under the same Policy. (Dkt. #11-1, at 7.) In an August 19 letter, Maurer further advised Abegglen that State Farm would not issue payment because the loss was less than his deductible, adding that there was also no ADPL to his shingles. (Dkt. #38-11, at 1.) Rather, Maurer attributed that damage to "wear and deterioration through ever changing weather conditions and routine seasonal cycles," and such damage was excluded by Abegglen's policy. (*Id.*) At his deposition, Maurer also testified that State Farm trained him that, for there to be hail damage, "the shingle must exhibit a bruise, fracture or penetration of the mat." (Maurer Dep. (dkt. #43) 11.) If a hailstone struck a shingle and caused granular loss, Maurer agreed that he would not count that loss as damage absent a bruise or fracture to the mat. (*Id.*)

On November 1, 2023, Abegglen filed (but did not serve) a lawsuit against State Farm in Wisconsin state court, asserting claims for breach of contract, bad faith, and statutory interest. In December 2023, Abegglen wrote State Farm, requesting reconsideration of his claim and enclosing an engineering report from Dennis Rich, who concluded that Abegglen's roof had blemishes and bruises consistent with hail impact.

In response to Rich's report, State Farm retained its own third-party engineer, Nick Pontillo, to evaluate Abegglen's roof. Pontillo explained that "[h]ailstones impacting

4

asphalt composition shingles can cause functional damage if the hailstones are large enough, have sufficient density, and, therefore, have sufficient impact energy to crack, bruise, or puncture the felt where the stones strike." (Pontillo Report (dkt. #38-18) 6.) After examining Abegglen's roof, Pontillo found,

> concentrated areas of absent granules exhibited no coincident bruising, were often oriented in non-random patterns, and roof slopes exhibited highly variable frequencies of granule loss areas. Therefore, it is concluded that the Abegglen residence asphalt composition shingle roof covering has not been damaged by hail. Areas of absent granules observed on the Abegglen residence roof covering can be most likely be attributed to long-term deterioration, manufacturing anomalies, foot traffic, and/or unintentional mechanical impacts.

(*Id.* at 7.) Pontillo also concluded that "[i]ndentations in metal appurtenances are considered aesthetic in nature and have not reduced the long-term water-shedding capacity of the building envelope." (*Id.*) Pontillo testified at his deposition that roof damage was a "reduction in the water shedding capacity of the roof," which typically manifested itself as a "bruise or fracture to the mat." (Pontillo Dep. (dkt. #53) 19.)

OPINION

Defendant moves for partial summary judgment only on plaintiff's bad faith claim, arguing that plaintiff's hail claim was fairly debatable as a matter of law. Summary judgment is appropriate when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (quotation marks omitted).

5

A plaintiff bringing a bad faith claim must show: "the absence of a reasonable basis for denying benefits of the policy and the defendant's knowledge or reckless disregard of the lack of a reasonable basis for denying the claim." *Advance Cable Co., LLC v. Cincinnati Ins. Co.*, 788 F.3d 743, 748 (7th Cir. 2015) (quoting *Brethorst v. Allstate Prop. & Cas. Ins. Co.*, 2011 WI 41, ¶ 26, 334 Wis. 2d 23, 798 N.W.2d 467) (quotation marks omitted).[3] This test includes an objective and a subjective component. *Brethorst*, 2011 WI 41, ¶ 30, 334 Wis. 2d 23, 798 N.W.2d 467. "The objective element tests 'whether the insurer properly investigated the claim and whether the results of the investigation were subject to a reasonable evaluation and review.'" *Advance Cable*, 788 F.3d at 748 (quoting *Brown v. Labor & Indus. Review Comm'n*, 267 Wis. 2d 31, 671 N.W.2d 279, 287-88 (2003)). "[W]hen a claim is 'fairly debatable,' the insurer is entitled to debate it, whether the debate concerns a matter of fact or law." *Anderson v. Cont'l Ins. Co.*, 85 Wis. 2d 675, 691, 271 N.W.2d 368 (1978). The subjective element asks whether the insurer was aware there was no reasonable basis for denial or displayed "reckless disregard of a lack of a reasonable basis for denial or a reckless indifference to facts or to proofs submitted by the insured." *Advance Cable*, 788 F.3d at 748 (quoting *Anderson*, 85 Wis. 2d at 695).

As an initial matter, plaintiff's bad faith claim is closely related to his breach of contract claim -- that is, whether the granule loss on plaintiff's roof was ADPL. At this point, a factual dispute exists because, while defendant appears to acknowledge that the

---

[3] Since both parties assume Wisconsin law controls in this case, this state's law applies. *See RLI Insurance Company v. Conseco, Inc.*, 543 F.3d 384, 390 (7th Cir. 2008) ("When neither party raises a conflict of law issue in a diversity case, the applicable law is that of the state in which the federal court sits.")

6

roof's granule loss amounts to "functional damage," it disputes whether the granule loss was "ADPL" from hail damage covered by the Policy, asserting that "the observed damage was due to long-term wear and deterioration." (Dkt. #55, at 2 (emphasis added).)

On the limited record provided to this court at summary judgment, however, a reasonable jury might conclude that defendant acted in bad faith by adoption of a policy *categorically* excluding granule loss from counting as ADPL even if caused by hail. To begin, State Farm engaged an at least nominally independent company, SeekNow, whose employee Mingari performed the initial roof inspection with defendant having only provided the location address, claim number, date of loss, and policyholder contact information. In his report, Mingari acknowledged that there were spots were the shingles had lost granules but impliedly determined that those spots were not caused by hail in concluding that there was "[n]o wind or hail damage" to plaintiff's roof. (SeekNow Report (dkt. #38-5) 3.) As Mingari later explained at his deposition, however the granule loss *could* have been caused by a blister, mechanical damage, or foot traffic, but he did not attribute the granule loss to those other causes in his report. *See Kielmar v. Erie Ins. Co.*, No. 20-CV-798, 2021 WL 5505861, at *2 (E.D. Wis. Nov. 24, 2021) ("summary judgment in favor of the insurer [on bad faith claim] is appropriate only if, *based on what the insurer knew at the time it denied the claim*, the claim was fairly debatable") (emphasis added).

Next, claims specialist Brinson, who relied on Mingari's report in denying plaintiff's claim, testified that defendant's internal guide required something *more than* granule loss for there to be hail damage, which at least suggests that he categorically disregarded the

granule loss Mingari noted. Indeed, Maurer admitted as much when he testified that defendant had *trained* him that hail damage required "a bruise, fracture or penetration of the mat." (Maurer Dep. (dkt. #43) 11.) Maurer's claims notes similarly suggest that he ignored granule loss damage in determining ADPL by writing that "no ADPL hail damage of *bruising, fracturing or puncturing* in test squares on all slopes." (Dkt. #38-10, at 3 (emphasis added).) In fact, Maurer's testimony suggests that defendant's policy was controlling, as he explained that he would *not* count *any* granule loss (absent a bruise, fracture, or penetration of the mat) caused by a hail strike as insurable damage. (Maurer Dep. (dkt. #43) 11.) Taking these facts together, therefore, a reasonable jury *could* conclude that Maurer found no ADPL hail damage to Abegglen's roof based on defendant's policy of not covering hail-induced granule loss rather than determining that the granule loss was *not* caused by hail.

Finally, defendant emphasizes Pontillo's attribution of the granule loss to long-term deterioration, manufacturing anomalies, foot traffic, and/or unintentional mechanical impacts, positing that this case turns, at most, on a good faith disagreement about whether plaintiff's roof suffered hail damage. However, Pontillo's report offers little evidence of defendant's good faith, having only retained him *after* plaintiff had filed suit and provided defendant with his expert's report.[4] Thus, if the court treated Pontillo's opinion as if defendant had retained him before plaintiff retained his own expert and filed suit, it would

---

[4] In fairness, it is unclear whether plaintiff had served the lawsuit on defendant at the time it hired Pontillo. Regardless, defendant only obtained an expert opinion in response to plaintiff's expert's report.

8

lessen any incentive for the insurer to conduct a thorough investigation *before* denying a claim. *Kielmar*, 2021 WL 5505861, at *2 ("If an expert retained *after* a claim is denied is treated the same as an expert retained *before* the claim is denied, the insurer has less of an incentive to conduct a thorough and complete investigation before denying the claim.") (emphasis original). Indeed, it would arguably be unfair to credit an insurer for performing a thorough investigation only after denying the claim and forcing the insured to go to the expense of hiring his own expert.

For his part, plaintiff analogizes the dispute here to that in *Advance Cable*, where the Seventh Circuit supposedly held that "direct physical loss" *included* "cosmetic" hail dents. *Advance Cable Co., LLC*, 788 F.3d at 747 ("There is no exception to the definition of "loss" for cosmetic damage, or any other kind of particular damage.") However, in *Advance Cable*, unlike here, defendant *conceded* the roof damage *was* caused by a hailstorm, and the dispute centered on whether cosmetic damage constituted a "direct physical loss" under the insurance policy. *Id.* at 746. In contrast, the dispute in this case centers on whether the areas of granule loss were caused by hail strikes. In sum, because the evidence would support a reasonable jury finding that defendant categorically excluded as ADPL hail damage only causing granule loss, the court must deny defendant's motion for partial summary judgment.[5]

---

[5] Plaintiff also asserts that defendant acted in bad faith by not obtaining a competitive bid for repairing the copper metal section of his roof after he provided it with a $11,040 bid. However, the evidence plaintiff cites does not support his assertion that he provided defendant with such a bid. (Maurer Dep. (dkt. #43) 8.) Thus, a reasonable jury might not find that defendant acted with deliberate indifference in determining that the cost of the metal roof repair was less than plaintiff's deductible.

ORDER

IT IS ORDERED that defendant's motion for partial summary judgment (dkt. #35) is DENIED as to plaintiff's bad faith claim.

Entered this 2nd day of May, 2025.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge